UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SANDRA SATINA,

                *Plaintiff,*

    -against-

NEW YORK CITY HUMAN RESOURCES
ADMINISTRATION,

                *Defendant.*

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-21-14

14 Civ. 3152 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff Sandra Satina ("Satina" or "Plaintiff") claims her employer, the New York City Human Resources Administration ("HRA" or "Defendant"), violated 42 U.S.C. § 2000e, *et seq.* ("Title VII"), New York State Human Rights Law § 290, *et seq.* ("NYSHRL"), and New York City Human Rights Law, Administrative Code § 8-101, *et seq.* ("NYCHRL") by discriminating against her on account of her gender, creating a hostile work environment, and retaliating against her. Defendant moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Defendant's motion is granted in part and denied in part, as set forth below.

## BACKGROUND[1]

    Satina is a fifty-two year old woman who has worked for more than half her life for HRA. (Am. Compl. ¶ 6). Her career at HRA began in 1986, when she was hired as a welfare

---

[1] Plaintiff attached an Amended Complaint ("Am. Compl.") to her papers opposing the motion to dismiss. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss ("Pl. Mem."), at Ex. 1. In its response papers, Defendant has indicated that the Amended Complaint should be dismissed for the same reasons as the original complaint. Reply Memorandum of Law in Further Support of Defendant's Motion to

1

fraud investigator. (*Id.* ¶¶ 7-8). After continuous favorable performance evaluations, she was promoted steadily and eventually was named Administrative Investigator Level II with the in-house rank of Deputy Director. (*Id.* ¶¶ 7-14). In this capacity, she was responsible for HRA's Prescription Fraud Unit, the Criminal Investigation Unit, the Special Operations Unit, and, briefly, the Medicaid Unit. (*Id.* ¶ 10). These units were in turn led by Managers, who held the lower civil service title of Administrative Investigator Level I. (*Id.* ¶ 11). Satina reported to the Director. (*Id.* ¶ 15).

In 2008, during an informal conversation with George Davis, the Manager of the Prescription Unit, Satina learned that his salary was thousands of dollars higher than Satina's salary. (*Id.* ¶¶ 17-18). She then learned, by means of the website See-ThroughNY.com, that another male subordinate, Phillip Schaffroth of the Prescription Unit, was also being paid more than she was. (*Id.* ¶ 19). She approached the Director at the time, Wildris Tejada, and asked for a salary increase in light of the fact that she was being paid less than subordinate employees who had fewer responsibilities and less experience than she did. (*Id.* ¶ 20). Tejada advised Satina to submit a written request for a higher salary. (*Id.* ¶ 21). Following this conversation, and for each of the next four years, she made a written request, but never received a response. (*Id.* ¶ 22-28). During this four year period, she asked several Directors about the pay discrepancy and visited Defendant's personnel office, and continued to receive no response. (*Id.* ¶ 28). During this time, she learned of two additional male subordinates, Charles Monsanto and Frank Pira, assistant directors in the Special Operations Unit and Medicaid Fraud Unit, respectively, who earned more than she did. (*Id.* ¶ 24). Following her discussion with Director Tejada in 2008,

---

Dismiss ("Reply Mem."), at 2. Accordingly, the Court treats the Amended Complaint as the operative complaint. All facts are taken from the Amended Complaint, unless otherwise noted. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

Satina received a negative performance evaluation for the first time. (*Id.* ¶ 37). Satina received no performance evaluations in 2009 and 2010. (*Id.* ¶ 38). As of the filing of this action, Satina was the only member of her division who had not yet received an evaluation for 2013. (*Id.* ¶ 39).

In 2012, the acting Director, Ziviko Pulisic, informed Satina that these male employees were promoted to a higher salary track in 2005, while Satina was out on leave. (*Id.* ¶ 29). He explained that Satina could not receive a similar promotion because there was no job performance evaluation for that year on which to base a salary adjustment for her. (*Id.*). Satina alleges, however, that she did work in 2005, and received a written performance evaluation which rated her as "Greatly Exceeds Expectations." (*Id.* ¶ 30). In June 2012, Satina complained about the pay discrepancy to the new Deputy Commissioner, Sheehan. (*Id.* ¶ 40). Sheehan told her later that month that she would be demoted. (*Id.* ¶ 41). On October 2, 2012, Satina filed a discrimination complaint with the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 42). The next month, she was demoted from Deputy Director to Associate Fraud Investigator. (*Id.*). In December 2013, Satina received a notice of right to sue from the EEOC. (*Id.* ¶ 3).

Satina alleges that Defendant is "creating and inflicting a hostile work environment focused on pushing the plaintiff out of her employment." (*Id.* ¶ 45). In 2013, Satina was "ordered into budget training." (*Id.* ¶ 47). Satina claims that this training would be of no use to her current position and would only be necessary were she to be demoted to the investigator level. (*Id.*). Satina's co-workers have stated to her that "'maybe things happen for a purpose,' hinting that they have heard that plaintiff Satina should quit or retire." (*Id.* ¶ 46). Weekly, she receives phone calls "at midday that suddenly buzz when she lifts the receiver," which she interprets as "someone want[ing] to communicate that she may be caught staying out too long at

lunch." (*Id.* ¶ 48). The computer she uses is the only one on her floor that does not work, and despite her requests, Defendant has not fixed it. (*Id.* ¶ 49). Satina now suffers from several medical ailments because of the stressful environment Defendant has created, has been forced to negotiate with her insurance carrier, has been forced to use her unused sick time, and is now under the care of a psychiatric social worker. (*Id.* ¶¶ 53-56). Defendant seeks to "discourage [Satina's] medical visits through ostentatious close supervision and time accounting." (*Id.* ¶ 57).

## DISCUSSION

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and construe the complaint in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (internal quotation marks omitted). The Court only "assess[es] the legal feasibility of the complaint"; it does not "assay the weight of the evidence which might be offered in support thereof." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) (internal quotation marks omitted). To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted).[2]

---

[2] The parties dispute the appropriate pleading standard. Plaintiff argues that Defendant urges the Court to apply an inappropriately high standard to Plaintiff's claims. Pl. Mem. at 4-6. Plaintiff attempts to make a distinction between the standards that would apply had Defendant not removed the case to federal court. In support of her argument for a lower standard, however, Plaintiff cites a federal case applying federal law. Federal law sets the applicable standards for the motion to dismiss. Plaintiff is correct that Defendant cites case law requiring an improperly high standard.

4

I.   **Discrimination Claims**

Satina claims that she was discriminated against on the basis of gender because she received a lower salary than male employees who had less experience than she did. To state a prima facie case of discrimination under Title VII and the NYSHRL,[3] a plaintiff must allege that (1) she belonged to a protected class; (2) she is qualified for the position held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). On a motion to dismiss, a plaintiff is not required to plead specific facts to show a prima facie case of discrimination; the elements of a prima facie discrimination case instead serve to "provide an outline of what is necessary to render a plaintiff's claims for relief plausible." *Peguero-Miles v. City Univ. of N.Y.*, 2014 WL 4804464, at *3 (S.D.N.Y. Sept. 25, 2014) (internal quotation marks omitted). Defendant argues that Plaintiff's allegations concerning the higher salaries of male employees are conclusory and fail to meet the standards required for discrimination claims. (Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def. Mem."), at 8-10; Reply Mem. at 3-5). But Defendant's support for this argument is based in Title VII cases on summary judgment. This is not the standard to apply at the current procedural stage.

Plaintiff's Amended Complaint provides the names and job titles of the male employees whose salaries are allegedly higher than hers. She explains the internal management structure of her division of the HRA and provides descriptions of her responsibilities, asserting clear factual allegations that these male employees fall below her in seniority yet received a higher salary.

---

[3] "Disparate treatment claims brought under Title VII . . . and the NYSHRL are all analyzed under the same standard." *Parra v. City of White Plains*, 2014 WL 4468089, at *8 (S.D.N.Y. Sept. 4, 2014); *accord Bowen-Hooks v. City of N.Y.*, 2014 WL 1330941, at 16 n. 19 (E.D.N.Y. Mar. 31, 2014) (citing cases).

Satina additionally alleges that, while male employees below her in rank received higher salaries, no female employee junior to her received a higher salary. Upon this information, one could infer discriminatory intent on the part of Defendant. *Delgado v. Triborough Bridge and Tunnel Auth.*, 485 F. Supp. 2d 453, 463 (S.D.N.Y. 2007) ("[F]actual assertions that employees not in her protected group were favored" would be sufficient to lead "to a permissible inference of . . . discrimination"). Accordingly, Satina has properly alleged each element of a prima facie discrimination claim. Satina is not required at this time to prove that males in her office make a higher salary than women, as Defendant would have it. It is instead sufficient that she has made plausible allegations that she earns a lower salary than male subordinate employees in her division because she is female.[4]

## II.  Retaliation

Satina claims that Defendant retaliated against her for her complaints about gender discrimination in the form of unequal pay by demoting her from Deputy Director to Associate Fraud Investigator. (Am. Compl. ¶¶ 41-42). A claim of retaliation requires the following allegations: (1) Satina was engaged in a protected activity, (2) Defendant knew of the protected activity, (3) Defendant took adverse employment actions against her, and (4) there was a causal connection between the protected activity and the adverse action. *See Paulino v. N.Y. Printing Pressman's Union, Local Two*, 301 F. App'x 34, 37 (2d Cir. 2008).

Satina's internal complaints regarding unequal pay constitute protected activity. *See*

---

[4] Plaintiff has adequately pled her discrimination claim under the NYCHRL. "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state laws . . . [and must construe] the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). The Court has already upheld Plaintiff's claims under the more stringent requirements of Title VII and the NYSHRL. Accordingly, these claims also meet the requirements for a discrimination claim under the NYCHRL.

6

*Thomas v. iStar Financial, Inc.*, 438 F. Supp. 2d 348, 364 (S.D.N.Y. 2006) ("Informal complaints to supervisors" are protected activity under Title VII). As a result of Plaintiff's internal complaint, Defendant was made aware of the protected activity. Subsequently, Plaintiff suffered an adverse employment action—she was demoted.

In addition, Plaintiff has sufficiently alleged a causal connection between the activity and the adverse action to overcome a motion to dismiss. She alleges, "In June 2012 plaintiff Satina brought the on-going discrimination to the attention of the new Deputy Commissioner Sheehan. In that month the Deputy Commissioner orally told plaintiff that she would be demoted. On October 2, 2012, the plaintiff filed her employment discrimination charge. A month and three days later, on November 5, 2012, the defendant demoted her from Deputy Director to Associate Fraud Investigator." (Am. Compl. ¶¶ 40-42). "Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). Here, Plaintiff's allegations regarding the proximity in time between the protected action and the adverse employment action provide a basis by which "a jury could plausibly . . . infer a causal connection." *Dimitracopoulos v. City of N.Y.*, 2014 WL 2547586, at *13 (E.D.N.Y. June 4, 2014) (internal quotation marks omitted). Defendant argues that "[P]laintiff does not state that she was informed of this demotion <u>after</u> she made her alleged complaint." Def. Reply at 5. Defendant is correct, but the Court construes the Amended Complaint in the light most favorable to the Plaintiff and thus interprets the Amended Complaint to allege that Plaintiff learned of her demotion following her complaint to Sheehan. (Am. Compl. ¶ 41). In further support of her retaliation claim, Plaintiff alleges that her demotion was made official one month and three days

following the filing of her EEOC Complaint. (*Id.* ¶ 42). As a result, Plaintiff has sufficiently stated a claim for retaliation based on her demotion following both her internal complaint and her EEOC charge.

### III. Hostile Work Environment

To establish a hostile work environment, a plaintiff must show that she was subjected to hostility because of her membership in a protected class. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 240 (2d Cir. 2007). Such an environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Id.* at 240 (internal quotation marks omitted). The alleged conduct must be "more than episodic; [it] must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted).

In the Amended Complaint, Plaintiff alleges the following occurrences in support of her claim for hostile work environment: (1) co-workers have stated to Plaintiff "maybe things happen for a purpose," which she interprets as an inference that she should quit or retire; (2) she was ordered to undergo budget training, which would only be applicable were she to be demoted; (3) she receives weekly telephone calls "at midday that suddenly buzz when she lifts the receiver," which she believes is "someone want[ing] to communicate that she may be caught staying out too long at lunch;" and (4) her computer is the only one of six on her floor that is not working. Am. Compl. ¶¶ 46-49. These allegations are insufficient to withstand Defendant's motion to dismiss the hostile work environment claim. While these experiences may be unpleasant for Satina, they lack the severity necessary to allege a hostile work environment, and instead appear to be mere annoyances. Moreover, Satina has failed to tie these allegations to her

8

claims regarding either discrimination or retaliation—her allegations do not show that these acts occurred either because of her gender or as a result of her complaints regarding pay. Satina has failed to sufficiently plead that she was exposed to a hostile work environment.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiff's hostile work environment claim. Defendant's motion is denied in all other respects. The Clerk of Court is directed to terminate the motion at Docket Number 12. The parties are ordered to submit a civil case management plan to the Court by November 21, 2014.

Dated: New York, New York  
October 21, 2014

SO ORDERED

_____  
PAUL A. CROTTY  
United States District Judge